UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAO HUY PHAN,<br><br>                       Petitioner,<br><br>v.<br><br>WARDEN OF THE OTAY MESA DETENTION FACILITY, et al.,<br><br>                      Respondents. | Case No.: 25-cv-02369-AJB-BLM<br><br>**ORDER GRANTING PETITION AND ISSUING WRIT OF HABEAS CORPUS**<br><br>**(Doc. No. 1)** |

       Petitioner Hao Huy Phan ("Petitioner") has been re-detained in the custody of the United States Department of Homeland Security ("DHS"), Bureau of Immigration and Customs Enforcement ("ICE"), at the Otay Mesa Detention Center in California since June 2025. (Doc. No. 1.) On September 8, 2025, Petitioner filed the instant petition for writ of habeas corpus under 28 U.S.C. § 2241 (the "Petition"), seeking relief due to prolonged detention in immigration custody pending removal, considering a prior 4-month detention. (*See id.*) For the reasons set forth below, the Court **GRANTS** the Petition.

**I.    BACKGROUND**

       Petitioner, who was born in Vietnam, received a permanent resident card after fleeing the communist regime of Vietnam in 1987 with his father. (Doc. Nos. 1 ¶¶ 12–13; 5-2, Declaration of Hao Phan, "Phan Decl.", at ¶ 1.) In 2007, Petitioner was convicted of

grand theft relating to identity theft. (Doc. No. 1 ¶ 14; Phan Decl. ¶ 2.) Initially, Petitioner was detained on or about December 20, 2007, and ordered removed by an Immigration Judge on March 16, 2008. (Doc. No. 1 ¶¶ 15–16.) From March 16, 2008, through July 22, 2008, Petitioner was detained by ICE pending removal. (Doc. No. 1 ¶ 17; Phan Decl. ¶¶ 3–4; Doc. No. 10-2, Declaration of Deportation Officer Rosendo Martinez, "Martinez Decl.", at ¶ 5.) Petitioner was released because ICE was unable to procure a travel document to Vietnam for Petitioner. (Martinez Decl. ¶ 5; Phan Decl. ¶ 4 ("ICE tried to remove me in 2008 but told me they could not deport me because I came to the U.S. before 1995.").) Petitioner was told to check in yearly with ICE, which he did (with a two-year exception) from 2008 until 2025. (Doc. No. 1 ¶18; Phan Decl. ¶¶ 5–6, 8.)

On June 18, 2025, ICE re-detained Petitioner when he appeared for his annual check-in. (Doc. No. 1 ¶ 17; Phan Decl. ¶ 8.) Since June, Respondents have been preparing a travel document request, which Vietnam requires to be submitted in Vietnamese. (Martinez Decl. ¶¶ 8–9.) At the time of filing the Response, no request had been submitted.

On September 8, 2025, Petitioner filed the instant Petition. (Doc. No. 1.) The Court issued a briefing schedule, appointed counsel at Petitioner's request, and set a hearing. (Doc. Nos. 6; 8.) On October 6, 2025, Respondents filed a return, opposing the Petition. (Doc. No. 10.) Petitioner filed a traverse on October 28, 2025. (Doc. No. 12.) The Court held a hearing on the Petition on November 3, 2025. (Doc. No. 13.)

## II.  LEGAL STANDARD

To succeed on a habeas petition, a petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Fifth Amendment's Due Process Clause provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

///

|   |   |
|---|---|
| 1 | "When an alien has been found to be unlawfully present in the United States and a |
| 2 | final order of removal has been entered, the Government ordinarily secures the alien's |
| 3 | removal during a subsequent 90–day statutory 'removal period,' during which time the |
| 4 | alien normally is held in custody." *Zadvydas*, 533 U.S. at 682. "An alien ordered removed |
| 5 | who is inadmissible . . . , removable[,] . . . or who has been determined by the Attorney |
| 6 | General to be a risk to the community or unlikely to comply with the order of removal, |
| 7 | may be detained beyond the removal period[.]" 8 U.S.C. § 1231(a)(6). "[I]n light of the |
| 8 | Constitution's demands, . . . an alien's post-removal-period detention [is limited] to a |
| 9 | period reasonably necessary to bring about that alien's removal from the United |
| 10 | States[,] . . . not . . . indefinite detention." *Zadvydas*, 533 U.S. at 689. "'[F]or the sake of |
| 11 | uniform administration in the federal courts,' and based on its reading of Congress's |
| 12 | probable intent, the [Supreme] Court created a 'presumptively reasonable period of |
| 13 | detention' of six months." *Xi v. U.S. I.N.S.*, 298 F.3d 832, 840 (9th Cir. 2002) (quoting |
| 14 | *Zadvydas*, 533 U.S. at 680). |
| 15 | In challenging detention pursuant to § 2241, the noncitizen has the initial burden to |
| 16 | "provide[ ] good reason to believe that." *Zadvydas*, 533 U.S. at 701. If the noncitizen |
| 17 | satisfies the initial burden, then the Government "must respond with evidence sufficient to |
| 18 | rebut that showing." *Id.* If the Government fails to meet its burden, then the non-citizen |
| 19 | must be released from detention. *See Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018). |
| 20 | **III.   DISCUSSION** |
| 21 | The parties dispute whether the Court has subject matter jurisdiction over the |
| 22 | Petitioner, whether the presumptively reasonable period of detention set by *Zadvydas* has |
| 23 | expired, and whether there is a significant likelihood that Respondents will be able to |
| 24 | remove Petitioner in the reasonably foreseeable future. The Court addresses each issue in |
| 25 | turn. |
| 26 | **A.   Subject Matter Jurisdiction** |
| 27 | As a threshold matter, "[f]ederal courts must determine that they have jurisdiction |
| 28 | before proceeding to the merits." *Lance v. Coffman*, 549 U.S. 437, 439 (2007). Relevant |

here, "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions," to a prisoner held "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(a), (c)(3). As Petitioner alleges he is detained in violation of his Fifth Amendment rights, this Court has subject matter jurisdiction.

Respondents initially argued in their papers that the Court lacks subject matter jurisdiction because "Petitioner's claims necessarily arise 'from the decision or action by the Attorney General to . . . execute removal orders,' over which Congress has explicitly foreclosed district court jurisdiction." (Doc. No. 10 at 3 (citing 8 U.S.C. § 1252(g)) and *Reno v. American-Arab Anti-Discrimination Committee* ("*AADC*"), 525 U.S. 471 (1999).)[1] However, at oral arguments, Respondents conceded the Court has jurisdiction over § 2241 petitions challenging duration of confinement, such as this one. (*See* Doc. No. 13.)

As noted by Petitioner (Doc. No. 11 at 3–4), "§ 1252(g) does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Ibarra-Perez v. United States*, --- F.4th ----, No. 24-631, 2025 WL 2461663, at *7–8 (9th Cir. Aug. 27, 2025). Although "discretionary decisions are shielded from review," Petitioner "objects to the lack of process afforded him," not to "ICE's discretionary authority about 'when' to remove him or 'whether' to remove him." *See id.* at *8.

Accordingly, Respondents' argument regarding the applicability of § 1252(g) is rejected. *See, e.g.*, *McSweeney v. Warden of the Otay Mesa Detention Facility, et al.*, No. 3:25-CV-02488-RBM-DEB, 2025 WL 2998376, at *4 (S.D. Cal. Oct. 24, 2025) (collecting

---

[1] With limited exceptions, 8 U.S.C § 1252 sets forth that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). The Supreme Court has interpreted § 1252(g) narrowly, holding that it "applies only to three discrete actions that the Attorney General may take" and that it is "implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *AADC*, 525 U.S. at 482.

cases); *Phan v. Noem*, No. 3:25-CV-02422-RBM-MSB, 2025 WL 2898977, at *2–3 (S.D. Cal. Oct. 10, 2025); *Constantinovici v. Bondi*, No. 3:25-CV-02405-RBM-AHG, 2025 WL 2898985, at *3 (S.D. Cal. Oct. 10, 2025); *Van Tran v. Noem*, No. 25-CV-2334-JES-MSB, 2025 WL 2770623, at *3 (S.D. Cal. Sept. 29, 2025); *Sanchez v. LaRose*, No. 25-CV-2396-JES-MMP, 2025 WL 2770629, at *2 (S.D. Cal. Sept. 26, 2025) (collecting case). The Court has jurisdiction over the instant Petition.

### B. *Zadvydas* Presumption

Respondents assert that "the period of presumptive reasonableness has not yet elapsed[.]" (Doc. No. 10 at 6.) Ostensibly in support of their calculation, Respondents state that "[i]n recent cases involving re-detention to effect removal, courts have recognized that ICE has a presumptively reasonable period of six months to obtain travel documents." (*Id.* at 5 (collecting cases).) However, as noted by Petitioner, none of the cases cited by Respondents support the contention that the stop-clock for presumptive reasonableness restarts with each detention. (Doc. No. 11 at 4–5.)

Although the Court has concerns about pro forma aggregation applied without the individualized consideration that § 2241 petitions require, the parties do not identify, nor is the Court independently aware, of any authority within this Circuit where detention is not calculated cumulatively based on all post–removal order detentions to determine whether *Zadvydas*'s presumption of reasonableness is exceeded. Rather, courts in this district appear to uniformly aggregate detention periods, even over the span of decades as is the circumstance of this Petition. *See, e.g.*, *Tran v. Scott*, No. 2:25-CV-01886-TMC-BAT, 2025 WL 2898638, at *4 (W.D. Wash. Oct. 12, 2025) (combining 2.5-month detention in 2004 with 5-month detention in 2025); *Nguyen v. Scott*, No. 2:25-CV-01398, 2025 WL 2419288, at *13 (W.D. Wash. Aug. 21, 2025) (combining a year-long detention in 2000–2001 with a 5-month detention in 2003–2004, to find a 1-month detention in 2025 not presumptively reasonable); *Tang v. Bondi*, No. 2:25-CV-01473-RAJ-TLF, 2025 WL 2637750, at *4 (W.D. Wash. Sept. 11, 2025) (combining a 92-day detention from 2011 with 113-day detention in 2025); *Huang v. Albarran, et al.*, No. 1:25-CV-01308 JLT EPG,

2025 WL 2986885, at *4 (E.D. Cal. Oct. 23, 2025) (collecting cases); *Sied v. Nielsen*, No. 17-CV-06785-LB, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018) (collecting cases); *S.F. v. Bostock*, No. 3:25-CV-01084-MTK, 2025 WL 2841022, at *4 (D. Or. Oct. 7, 2025) ("Respondents concede that Petitioner's detention should be measured cumulatively[.]").

In fact, looking beyond the Ninth Circuit, "[m]ost courts to consider the issue have concluded that the *Zadvydas* period is cumulative, motivated, in part, by a concern that the federal government could otherwise detain noncitizens indefinitely by continuously releasing and re-detaining them." *Siguenza v. Moniz*, No. 25-CV-11914-ADB, 2025 WL 2734704, at *3 (D. Mass. Sept. 25, 2025) (collecting cases across circuits); *Abuelhawa v. Noem*, No. 4:25-CV-04128, 2025 WL 2937692, at *4 (S.D. Tex. Oct. 16, 2025) (same) (collecting cases across circuits); *see also, e.g.*, *Nhean v. Brott*, No. CV 17-28 (PAM/FLN), 2017 WL 2437268, at *2 n.1 (D. Minn. May 2, 2017), *report and recommendation adopted*, No. CV 17-28 (PAM/FLN), 2017 WL 2437246 (D. Minn. June 5, 2017) ("The Court is aware of no authority to suggest that the six month presumptively reasonable detention period would start over after Nhean was placed back into ICE custody following revocation of supervised release."). *But see Liu v. Carter*, No. 25-3036-JWL, 2025 WL 1207089, at *2 (D. Kan. Apr. 25, 2025) ("[T]he removal-period clock restarts when an alien subject to a removal order is again detained by ICE."); *Barrios v. Ripa*, No. 1:25-CV-22644, 2025 WL 2280485, at *8 (S.D. Fla. Aug. 8, 2025) (citing 8 U.S.C. § 1252(g) for the idea that aggregating detention periods "would obstruct an area that is in the discretion of the Attorney General—effectuating removals").

Considering that Petitioner was detained for 4 months in 2008 and has currently been re-detained for nearly 5 months, in light of the vast majority of case law interpreting *Zadvydas*, the Court finds Petitioner's current detention is no longer presumptively reasonable.

### C. Significant Likelihood of Removal in Reasonably Foreseeable Future

Respondents argue that "Petitioner cannot show that there is no significant likelihood of removal in the reasonably foreseeable future," because (1) ICE has been

preparing Petitioner's travel document request, (2) ICE will begin efforts to secure a flight itinerary once it receives a travel document, and (3) ICE has succeeded in procuring travel documents to remove other Vietnamese citizens to Vietnam. (Doc. No. 10 at 6–7.)

In his Traverse, first Petitioner counters that Respondents have not showed his removal is significantly likely because generalizations about successful removal of other pre-1995 Vietnamese citizens does not, without more, demonstrate removal of Petitioner specifically is likely. (Doc. No. 11 at 6–7.) Petitioner points out that Respondents fail to address how many requests they have submitted to Vietnam, how many of such requests remain pending, and whether Petitioner qualifies under the 2020 Memorandum of Understanding ("2020 MOU") between Vietnam and the United States. (*Id.* (collecting cases).) In fact, Petitioner notes that "[m]any courts have agreed that requesting travel documents," which the Court points out has yet to occur in this case, "does not itself make removal reasonably likely." (*Id.* at 8–9 (collecting cases).)

Second, Petitioner asserts that Respondents provide no evidence that removal will happen in the reasonably foreseeable future because they fail to address how long travel document requests typically take and no request has been submitted yet. (*Id.* at 9–11.) In contrast, Petitioner provides the declaration of Vietnamese removal specialist Tin Thanh Nguyen (Doc. No. 11-1, "Nguyen Decl."), in which Nguyen avers that a response from Vietnam regarding the issuance of a travel document typically takes "many months" because the process involves coordination between the Ministry of Foreign Affairs, the Ministry of Public Security, and local police, the latter of whom must conduct interviews and site-visits with the person's relatives in Vietnam. (Doc. No. 11 at 11; Nguyen Decl. ¶¶ 7–8.) Nguyen further avers that this process "takes even longer" for those who entered the United States prior to 1995 because "many people no longer have any relatives in Vietnam who can verify their identity, or they do not have any documentation from Vietnam at all." (Nguyen Decl. ¶ 9.)

Based on the papers and the hearing, Petitioner meets the initial burden of demonstrating that removal is not significantly likely in the reasonably foreseeable future,

and Respondents fail to provide any substantive rebuttal of Petitioner's showing.

After spending four months in ICE custody in 2008, Petitioner was released "because ICE was unable to obtain a travel document." (Martinez Decl. ¶ 5.) In oral argument, much like in their papers, Respondents point to removal of other individuals to Vietnam as the basis for their belief that they will be able to procure a travel document now when they failed to do so in 2008. (*See* Doc. Nos. 10 at 6–7; 13.) However, evidence that Respondents have successfully removed other Vietnamese citizens is insufficient to demonstrate a significant likelihood that *Petitioner* will receive a travel document. *See, e.g.*, *Lopez-Cacerez v. McAleenan*, No. 19-CV-1952-AJB-AGS, 2020 WL 3058096, at *6 (S.D. Cal. June 9, 2020) ("[G]eneral indications that U.S. agencies have been in discussions with [target country] regarding repatriation efforts do not indicate that those discussions will result in the timely removal of Petitioner, as it is unclear whether those efforts will be successful.").

Moreover, Respondents do not cite to any change in circumstances or characteristics *specific to Petitioner* to support this belief. (*See generally* Doc. Nos. 10; 13.) In fact, Respondents were unable to identify the number of total requests submitted to Vietnam, the number of pending requests, the average amount of time requests remain pending, whether Petitioner qualifies under the 2020 MOU, or even what the repatriation criteria for the 2020 MOU are, when questioned during the hearing.[2] (*See generally* Doc. No. 13.) The sheer existence of the 2020 MOU is insufficient to demonstrate any likelihood of success in removing Petitioner. *See, e.g.*, *Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("[The 2020 MOU] is not enough to show there is a significant likelihood that Petitioner will be removed to Vietnam because the memorandum does not mandate that Vietnam will accept Petitioner. Vietnam has total

---

[2]   Incongruently, after relying heavily on Deportation Officer Martinez's declaration that ICE has removed 324 pre-1995 Vietnamese citizens in the 2025 fiscal year to demonstrate a significant likelihood of removal, Respondents rebuffed the Court's questions by stating that the proper inquiry is *individualized* to Petitioner and *not* to be based on statistics. (*See* Doc. No. 13.)

discretion whether to issue a travel document to any individual.") (citations omitted).

Finally, Respondents argue that, from June to October, they were preparing the travel document request, which included complete translation into Vietnamese, and they have recently transmitted the complete request to ICE headquarters. (Doc. No. 10 at 6.) However, Respondents concede that the travel document request has yet to be submitted to Vietnam, provide no estimate for when it will be submitted, and provide no estimate for how long it will take for Vietnam to respond.[3] (Doc. No. 13.) In contrast, Petitioner proffers the declaration of a Vietnamese removal specialist, detailing the steps Vietnam takes in processing such requests and resulting prolonged response time. (*See* Nguyen Decl.) Accordingly, the Court finds that Respondents fail to demonstrate that any potential removal of Petitioner would occur within the reasonably foreseeable future. *See, e.g.*, *Phan v. Noem*, 2025 WL 2898977, at *4; *Nguyen*, 2025 WL 2419288, at *16 (finding the Government failed to meet its burden because showing that "there is at least some possibility that Vietnam will accept [the p]etitioner at some point . . . is not the same as a significant likelihood that he will be accepted in the reasonably foreseeable future").

Considering that Petitioner met his burden and that Respondents fail to proffer a substantive rebuttal, the Court finds that "there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Thus, the Court holds that continued detention of Petitioner is "unreasonable and no longer authorized." *See Zadvydas*, 533 U.S. at 680.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** the Petition for habeas relief (Doc. No. 1) and **ISSUES** a writ of habeas corpus requiring Petitioner's immediate release from custody. The Court further **ORDERS**:

1. Respondents must release Petitioner from custody within **24 hours** of the

---

[3] At the hearing, Respondents stated that they have *requested* Vietnam respond within thirty days. Such a request is far from evidence of compliance.

electronic docketing of this Order.

2. **No later than 12:00 PM on November 12, 2025**, counsel for Respondents must file and serve a declaration averring that Respondents have complied with this Order and that Petitioner has been released.

3. Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them are prohibited from removing Petitioner to a country other than Vietnam without notice and a meaningful opportunity to be heard in reopened removal proceedings with a hearing before an immigration judge.

**IT IS SO ORDERED.**

Dated:  November 10, 2025

Hon. Anthony J. Battaglia
United States District Judge